JOSEPH A. LABELLE *vs.* GEORGE N. HAZARD, *Town Treasurer* OF THE TOWN OF NARRAGANSETT.

MAY 20, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. This action of assumpsit was brought against the defendant in his capacity as town treasurer of the town of Narragansett to recover salary allegedly due the plaintiff as highway surveyor of that town for the period from February 11 to June 7, 1957. The case was tried before a justice of the superior court sitting without a jury and resulted in a decision for the plaintiff in the amount of $1,-361.85 and costs. It is here on the defendant's exceptions to the decision and to certain evidentiary rulings.

The facts are not in dispute. The plaintiff had held the office of highway surveyor since the general election in November 1954. By virtue of the provisions of public laws 1948, chapter 1998, he was to continue in office for a term of two years or until a successor was duly elected and qualified. In the general election of November 6, 1956 plaintiff's candidacy for the office was contested by Joseph A. Monahan, Jr. After the board of canvassers of the town of Narragansett announced the total votes cast for each candidate, an appeal was taken by plaintiff herein to the

state board of elections on December 20, 1956. Said board in a written decision notified the board of canvassers on January 30, 1957 that on the basis of ballots cast at the polling place and war ballots LaBelle had 803 votes and Monahan had 797 votes.

Besides the aforesaid votes there remained to be counted civilian absentee and shut-in ballots. These ballots were the subject of a suit between LaBelle and Monahan which was decided by this court in favor of LaBelle. See *Powers ex rel. LaBelle* v. *Monahan,* 85 R. I. 398.

On February 8, 1957 the board of canvassers of said town adopted a vote stating, *inter alia,* that it "cannot issue a Certificate of Election to either candidate" and voted to transmit this decision to the town council. In a special meeting held on the same day the council appointed Joseph A. Monahan, Jr. to the office of highway surveyor.

Notwithstanding this purported appointment of a successor, plaintiff reported for work as usual on February 11, 1957, the next business day following the council action. He refused to vacate his office on that morning as requested by the town officials, and at three o'clock that afternoon Monahan, the de facto officer, accompanied by the acting town sergeant, appeared and under an apparent threat of arrest plaintiff surrendered the premises.

The plaintiff commenced quo warranto proceedings in the supreme court by petition filed February 28, 1957. He was kept out of office until June 7, 1957 when our opinion in the matter of *Powers ex rel. LaBelle* v. *Monahan, supra,* was received by the town of Narragansett. The plaintiff was not paid his salary for the period from February 11 to June 7, 1957. During this time the town paid Joseph A. Monahan, Jr. the salary due the highway surveyor. On June 14, 1957 plaintiff presented in writing a claim to the town council in the amount of $1,361.85 for his salary as highway surveyor for the period in question. The town refused to pay this sum and plaintiff brought suit.

46

The essence of the defense, as we understand it, is that payment was made by the town to a de facto officer and that recourse of the de jure officer, if any, must be against such de facto officer and is based upon principles of public policy, namely, that the office was one which must be filled to carry out the work necessary to the town, and further that the taxpayers, that is, the town, should not be called upon to pay twice for work done once. Both parties have cited numerous authorities in support of their respective positions, but neither party has cited a Rhode Island case, and our examination of the Rhode Island authorities reveals this to be a case of first impression.

Cases in other jurisdictions appear to be in direct conflict. A numerical majority of the courts appear to hold that payment to a de facto officer performing his duties under a claim and color of title to the office effectively discharges the public body from liability to the de jure officer or employee for that period in which the de facto officer performed his duties and received compensation therefor. *Board of Auditors* v. *Benoit,* 20 Mich. 176; *Coughlin* v. *McElroy,* 74 Conn. 397; 64 A.L.R.2d 1375, 1378. The minority opinion holds that such payment will not preclude recovery by the de jure officer or employee. See *Andrews* v. *City of Portland,* 79 Me. 484; *Baker* v. *Nashua,* 77 N. H. 347; 64 A.L.R.2d 1375, 1390. Public policy is cited as authority for a decision by courts favoring both views. *Ness* v. *City of Fargo,* 64 N. D. 231.

It is the opinion of this court that where the governmental body is responsible for the situation giving rise to the dispute to office, where it has notice that such a dispute exists, and where the de jure officer in no way acquiesced in his removal from office, he is entitled to the salary of the office regardless of whether a de facto officer has already been paid by the governmental body. The salary of a public official is an incident to the office, and the legal right to receive or enforce the payment thereof goes with the

legal title thereto. *Andrews* v. *City of Portland, supra;* 55 A.L.R. 997, 1004.

It is well recognized that a de facto officer, even though he performs the duties of the office, has no legal right to the salary and may not sue to recover payment for services which he has performed, and furthermore if he had in fact received the emoluments of office, he would have no right to retain them and could be compelled to account therefor to the officer de jure. *Douglass* v. *State ex rel. Wright,* 31 Ind. 429; *Board of Auditors* v. *Benoit, supra; Ness* v. *City of Fargo, supra; Dolan* v. *Mayor, etc., of N. Y.,* 68 N. Y. 274. But in our opinion justice requires that the public treasury be made to respond to the de jure officer and that the de facto officer be not made to suffer where the fault for the de jure officer's absence from office lies with public agents and not with the de facto officer.

Assuming that public policy equates the public good, *Jorgenson* v. *Metropolitan Life Ins. Co.,* 136 N.J.L. 148, 153, we cannot agree that the public good would be served by denying to a public officer that compensation to which he is entitled by law because such compensation has been erroneously paid to someone who was not entitled to receive it. A de jure officer who has been excluded from office may rest upon his legal right to the salary of the office regardless of the occupancy of that office by a de facto officer, absent any conduct on the part of the de jure officer which might amount to a waiver or estoppel.

It does not appear that plaintiff acquiesced in his illegal removal or in the occupancy of the office by the de facto officer. Rather it appears that at all times he manifested a determination to claim his right to the office and the emoluments thereof. It is the opinion of this court that the stronger reasons of public policy are in support of the rule that a de jure officer is entitled to his right to the salary of his office regardless of whether a de facto officer has in

fact occupied the office, performed the duties thereof, and received what purported to be the salary thereof.

In *Board of Auditors* v. *Benoit, supra,* Mr. Justice Cooley, in dissenting from what is described as the majority view, stated at page 192: "This decision appears to me to be sustainable on the soundest reasons of public policy. A wrong is done to society and to public order in every instance in which the usurpation of a public office takes place; and the rules of law ought to be such as to give the greatest possible discouragement to such a proceeding. The county authorities, in a case like this, ought not to be told that they may countenance the intrusion with impunity, and deliver over to a usurper the emoluments of an office to which he has neither a legal, nor a moral claim."

While recognizing that this decision places our court with the numerical minority of courts that have considered this question, we are of the opinion that the position which we take is sound and promotes substantial justice. To hold that payment by a disbursing officer to a de facto officer exonerates him from liability to the de jure officer for the salary would only stimulate irresponsible persons to cling to or lay claim to an office without a shadow of title so as to exclude the lawful occupant.

We recognize that the principles of waiver and estoppel may be applied as against a de jure officer, but where as in this case the de jure officer in no way acquiesces in his illegal removal, we cannot say that public policy will be served by denying him his right to compensation. See *Ness* v. *City of Fargo, supra; Board of County Comm'rs* v. *Litton,* Okla., 315 P.2d 239. The court in the latter case recognized this as the sounder view and in fact overruled prior Oklahoma cases which followed the numerical majority.

We have examined for prejudicial error the several exceptions taken by the defendant to the admission and exclusion of evidence, having in mind that this case was heard without the intervention of a jury. It is our opinion that

most of the rulings to which these exceptions were taken, if erroneous, did not prejudice the defendant. Such of these rulings as were made to the presentation of evidence bearing on the issue of the defendant's good faith are without materiality, as our decision is not based on that issue. The ruling excluding testimony as to the plaintiff's having engaged in another business, if erroneous, was not prejudicial, since substantially the same evidence was subsequently admitted into the record without objection. These exceptions are overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Letts & Quinn, Daniel J. Murray, Jerome B. Spunt,* for plaintiff.

*James O. Watts,* Town Solicitor, for defendant.