INTERNATIONAL DEPOSITORY, INC.

v.

STATE of Rhode Island.

No. 91–133–A.

Supreme Court of Rhode Island.

Feb. 24, 1992.

 

 
 
 
 
 
 
 
 
 

 
 
 
 
 
 

 
 

 
 
 
 
 
 
 
 

 
 
 
 

 _____

Paul J. Pisano, Dennis E. Carley, Roberts, Carroll, Feldstein & Pierce, Providence, for plaintiff.

Mark W. Siegars, Kendra Beaver, DEM, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the defendant's appeal from a judgment in favor of the plaintiff. We affirm.

The plaintiff, International Depository, Inc. (International), filed this action against defendant, State of Rhode Island (state), in the Washington County Superior Court in February of 1985. International sought $456,508 for storage of hazardous waste for the state, relying upon the theory of quantum meruit. By an order dated October 29, 1985, People's Trust Company (People's) was permitted to intervene as a party plaintiff on the grounds that People's, as a secured creditor of International, was a real party in interest. On May 2, 1988, People's and International filed the amended complaint that was before the court at the commencement of trial. The State Legislature passed a special act, 89–H7583, on July 12, 1989, authorizing a suit against the state by International and People's.

A jury trial began on May 7, 1990, in the Superior Court for Washington County. Immediately prior to the start of trial People's voluntarily dismissed its claim pursuant to Rule 41(a)(1)(ii) of the Superior Court Rules of Civil Procedure. At that time the state unsuccessfully moved for dismissal of this action on the grounds that the court no longer had jurisdiction over the matter. The trial court denied the motion on the grounds that the state's motion was not timely, and the matter proceeded to jury trial.

The evidence introduced at trial showed that on November 14, 1979, Austin J. Donnelly (Donnelly), president and chairman of the board of International Armored Services (IAS), received a telephone call from the Governor's office. The caller asked Donnelly if the state could store confiscated hazardous waste at International's high-security storage facility at Quonset Point. International, a subsidiary of IAS, was a warehouse-storage company established to store precious metals, food stamps, and coins.

Donnelly understood that the hazardous waste would be stored at the Quonset Point facility for a short period of time. However, as the months passed, Donnelly began to realize that that would not in fact be the case. In April of 1983 Donnelly delivered a bill to Thomas Wright, director of the Department of Environmental Management's division of air and hazardous materials, for $456,508. Subsequent attempts by Donnelly to collect on the bill were unsuccessful. As a result International initiated the within action to recover $456,508.

At trial International presented Kenneth Woodruff (Woodruff) as an expert on storage fees for hazardous waste during the period in question. Woodruff was of the opinion that the total estimated cost would be between $300,000 and $360,000. The state attempted to rebut Woodruff's testimony by offering the testimony of three proposed witnesses. Two of those witnesses were not permitted to testify because the state had failed to identify them as witnesses in its answers to interrogatories. The third witness was precluded from testifying about the reasonableness of International's charges for storage because the witness was not identified as an expert witness in the state's answers to interrogatories.

At the close of International's case in chief the state moved for a directed verdict. The trial court denied the motion, and the state presented its case and rested. The jury returned a verdict for International and awarded it $360,000 plus interest. The trial court denied the state's motions for a new trial, remittitur, and a renewed motion for directed verdict. The state filed its notice of appeal in due course.

I

■ The first issue raised on appeal is whether the trial court erred when it denied the state's motion to dismiss for lack of a real party in interest.

Prior to impanelment of the jury the state moved orally to dismiss the action. The state asserted that since International was not a real party in interest—because it had assigned all its accounts receivable,

including the right to bring the present claim, to Fort Barton Holdings, Inc. (Fort Barton)—it could not maintain the action. The trial court ruled that the motion was not timely because it was filed on the morning of trial and that granting the motion would be highly prejudicial and cause great delay.

On appeal the state argues that the intervention of People's in this action as a secured creditor of International caused a merging of their mutual claim and that People's became the real party in interest. As a result when People's voluntarily dismissed its claim against the state, there no longer was a case in controversy before the trial court.

We need not address this issue. The established rule of law in Rhode Island is that we shall not consider an issue raised for the first time on appeal that was not properly presented before the trial court for its consideration. *Bouchard v. Clark*, 581 A.2d 715, 716 (R.I.1990); *Rhode Island Hospital Trust National Bank v. de Beru*, 553 A.2d 544, 547 (R.I.1989). A review of the record in this matter unequivocally reveals that the state has raised for the first time on appeal the issue of whether People's was the real party in interest. Because the state did not properly present the issue before the trial court, we shall not review it here. We also note that the issue raised before the trial court, that Fort Barton was the real party in interest, has not been addressed in the state's brief. "Claims of error that are unsupported by either argument or citation of authority are entitled to no consideration on review." *James J. O'Rourke, Inc. v. Industrial National Bank*, 478 A.2d 195, 198 n. 4 (R.I. 1984).

## II

■ The next issue before the court is whether the trial court erred in allowing the jury award to stand in light of the enabling legislation, 1989 R.I. Acts & Resolves 54 (the act), that authorized suit against the state by International and Peoples.

According to the state, no evidence was presented that International suffered any loss. International argues that the jury award was within the scope of the act.

■ The law in Rhode Island concerning interpretation of an act that waives the state's sovereign immunity is well settled. *See In re Sherman*, 565 A.2d 870 (R.I. 1989); *Andrade v. State*, 448 A.2d 1293 (R.I.1982). The Legislature is presumed not to have relinquished any part of the state's sovereign power unless the intent to do so is "clearly expressed or arises by necessary implication from the statutory language." 448 A.2d at 1295.

Section 1 of the act states the following:

"The state of Rhode Island and Providence Plantations consents to have brought against it Civil Action No. WC 85–60, presently pending in Washington County Superior Court, by International Depository, Inc. and People's Bank, National Association, upon a claim for reimbursement for monies expended on behalf of the state in obtaining an Environmental Protection Agency permit for the storage of toxic waste, procuring requisite insurance relating to said storage, preparing and maintaining facilities for the storage of toxic waste and storing toxic waste." 1989 R.I. Acts & Resolves 54.

Clearly the Legislature consented to International's action for both reimbursement of expenses on the state's behalf and payment of fees for storing the hazardous waste. Section 3 of the act empowers the jury to award up to $500,000 if it finds that International and People's "sustained damages as a result of the wrongful failure of the state * * * to reimburse them for services rendered."

The state's interpretation of the act would attribute to the Legislature an intent that would lead to an absurd result and clearly would detract from the underlying purpose of the enactment. Such an interpretation is ridiculous in light of the express consent set forth in section 1 of the act. Furthermore the Legislature knew that the specific service International rendered to the state was storage of hazard-

ous waste. Therefore, we conclude that the trial court did not err when it affirmed the jury award.

## III

■ The third issue before the court is whether the trial court erred when it denied the state's motion for a new trial. According to the state, the trial court should have granted its motion for a new trial because there was no evidence in the record to substantiate the jury's award of $360,000.

■ Ruling on a motion for a new trial involves a two-step process. First, the trial justice must evaluate the evidence presented at trial in light of the jury instructions. *Izen v. Winoker,* 589 A.2d 824, 828 (R.I. 1991). In doing so, the trial justice "exercises his or her independent judgment regarding the weight of the evidence and the credibility of the witnesses." *Id.* Relying on this evaluation of the evidence, the trial justice, acting as a superjuror, must decide whether to set aside the verdict. *Id.* If the jury verdict is clearly wrong because it "fails to respond truly to the merits of the controversy, fails to administer substantial justice, and is against the fair weight of the evidence," then the verdict should be set aside. *Id.* at 828–29. But if the evidence is evenly balanced or is such that reasonable minds could differ regarding a verdict, then the trial court must affirm the jury's verdict. *Id.* at 829.

■ Our review of the trial justice's ruling involves a different process. *Id.* If the trial justice has performed the above-described process, his or her decision is accorded great weight by this court and will not be disturbed unless the appellant can show that the "trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *Id.*

Here the trial justice's evaluation of the evidence included recognition of the unrebutted and persuasive testimony of International's expert witness, Woodruff on the issue of storage fees. The trial court noted that Woodruff's testimony provided the

jury with two formulas for determining the value of the storage services International provided to the state. One formula resulted in a total of $299,000; the other formula resulted in a yearly total of $120,000, which if multiplied by the three-year period that the bulk of the hazardous materials was stored, would total $360,000. The trial court also noted International's $456,000 bill for storage services and the testimony of Donnelly and John P. Leo (Leo). After completing its evaluation of the evidence, the trial court concluded that in light of the charge and the evidence presented the jury verdict should not be disturbed. We agree.

## IV

■ We next address the issue of whether the trial court erred when it denied the state's motion for directed verdict. After the jury rendered its verdict, the state attempted to renew its motion for directed verdict. The trial court ruled that the state's motion was improperly before the court because the motion had not been renewed at the close of the state's case.

On appeal the state contends that the renewed motion for a directed verdict was properly before the trial court and that its motion should have been granted because the evidence presented by International was not sufficient to make out a prima facie case.

In order to preserve it for appellate review, the motion for directed verdict must be renewed at the close of all the evidence. *Simpson v. Dailey,* 496 A.2d 126, 129 (R.I. 1985). Here the state failed to renew the motion at the close of all evidence. Therefore, the issue is not properly before us.

## V

The final issue is whether the trial court erred when it ruled that the state could not present Thomas Dolce (Dolce) and Donald Corey (Corey) as witnesses and that Leo could not testify about the reasonableness of the bill International submitted to the state.

### A

During the early stages of International's case in chief it filed a motion under Rule 33 of the Superior Court Rules of Civil Procedure to preclude the state from presenting as witnesses Dolce, a former International employee, and Corey, an employee of Clean Industries. After hearing arguments thereon, the trial court concluded that the state had breached its duty under Rule 33(c) by failing to update its answers to interrogatories to notify International that Dolce and Corey were potential witnesses.[1] The trial court noted the state's lack of diligence in spite of its having had ample opportunity to prepare for trial and concluded that the most suitable sanction available under Rule 33 would be the exclusion of these witnesses.

On appeal the state renews its argument that a portion of its answer to People's interrogatory No. 2 provided International with adequate notice that Dolce and Corey were potential witnesses and that International should have filed a motion to compel more responsive answers if International believed the answer inadequate. The state also argues that if its answer to the interrogatory did not provide adequate notice, then the trial court should have passed the case off the trial calendar to allow International an opportunity to depose the proposed witnesses. It is the state's position that the trial court's ruling prevented consideration of the case on its merits. *See Lacy v. Peerless of Providence, Inc.* 120 R.I. 278, 280–81, 387 A.2d 1040, 1041–42 (1978).

Rule 33(c) states the following:

"If the party furnishing answers to interrogatories shall obtain subsequently information which renders such answers incomplete, amended answers shall be served not later than ten (10) days prior to the day fixed for trial. Thereafter amendments may be allowed only on motion and upon such terms as the court may direct."

Rule 33 does not specify sanctions that are available if a party breaches his or her duty to amend. The consequences for such conduct are set forth in Rule 37. Rule 37(d) states in part:

"If a party fails to serve amended answers to interrogatories as required by Rule 33(c) the court may enter an order prohibiting that party from introducing evidence as to any matter which ought to have been the subject of amended answers, or the court may in its discretion pass the case on such terms and conditions as are just."

The decision to impose a particular sanction is within the sound discretion of the trial court. *See Margadonna v. Otis Elevator Co.,* 542 A.2d 232, 233 (R.I.1988); *Gormley v. Vartian,* 121 R.I. 770, 775–76, 403 A.2d 256, 259 (1979); *Lacy,* 120 R.I. at 280–81, 387 A.2d at 1042. The trial justice selects the sanction he or she believes is "most appropriate for the situation in question." *Margadonna,* 542 A.2d at 233. Our review is limited to whether the trial court abused its discretion. *Gormley,* 121 R.I. at 775–76, 403 A.2d at 259; *Lacy,* 120 R.I. at 281, 387 A.2d at 1042. The record reveals that this is not an instance wherein the state had but a few short weeks to prepare for trial. Rather the trial justice pretried the case on at least three separate occasions, apparently over a one year period. Yet the state filed motions that should have been filed long before trial, including the oral motion to dismiss for lack of a real party in interest, immediately prior to jury selection. The state also failed to update answers to interrogatories as required under Rule 33(c). The record indicates a lack of diligence regarding compliance with the civil rules. The hardship that International would have suffered had the case been passed to permit discovery must be considered. We find no abuse of discretion.

### B

The state contends that the trial court also erred when pursuant to Rules 33(c) and 37(d) it barred John Leo (Leo), a

---

1. People's interrogatory No. 2 asked the state to identify all persons having knowledge concerning storage of the hazardous waste by International. The state's response includes the phrase "Various employees and agents of International Depository, Inc."

Department of Environmental Management (DEM) employee, from testifying about his job responsibilities. In substance Leo would have testified about his investigation into the reasonableness of International's charges for storing hazardous wastes and his personal experience in evaluating charges for storing hazardous wastes for DEM. According to the state, the trial court erred when it concluded that such testimony could not be presented because the state failed to identify Leo as an expert witness in its answer to People's interrogatory No. 14. The state's position is that Leo was not an expert witness but rather a factual witness who had personal knowledge of the services International actually provided to the state, as well as knowledge of the actual cost of storing hazardous-waste materials in New England during the period in question. International argues that this was an attempt to bypass the trial court's earlier exclusion of expert-witness testimony by portraying Leo as a lay witness testifying only about his job responsibilities. As previously stated, the decision to exclude testimony under Rule 37(d) is within the sound discretion of the trial court. Our review of the trial court's decision is limited to determining whether there was an abuse of discretion.

At trial the state asked Leo if he had made a recommendation to his supervisor at DEM in regard to whether International's charges for storing hazardous waste were reasonable. Leo responded as follows: "After reviewing my information, the bill, I proceeded to recommended [sic] to my superiors that the bill was way inflated due to the information that I had derived." After argument the trial court concluded that Leo had "not demonstrated any qualifications * * * upon which he could base an expert opinion," that Leo was not noticed as an expert witness, and that a lay person may not testify to what is a reasonable cost of storage because that kind of material opinion is inadmissible hearsay unless given by an expert witness. After a review of the record we conclude that the trial court did not abuse its discretion in ruling that Leo would not be allowed to give such testimony.

For all these reasons the state's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.