STATE

v.

David NUNEZ, a.k.a. Monica Nunez.

No. 89–489–M.P.

Supreme Court of Rhode Island.

Dec. 2, 1993.

Jeffrey Pine, Atty. Gen., Jane McSoley, Aaron Weisman, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin, Asst. Public Defender, for defendant.

OPINION

LEDERBERG, Justice.

This matter is before the Supreme Court on the petition for writ of certiorari of David Nunez a.k.a Monica Nunez (defendant) from the Superior Court's denial of the defendant's pretrial motion to suppress evidence. The issue presented is whether a retired justice of the District Court possesses the authority to sign search warrants. For the reasons stated herein, we find that the retired justice in this case lacked authority to sign the warrant under which police seized evidence and subsequently charged the defendant. Therefore, we grant the petition for certiorari and quash the judgment of conviction. A summary of the pertinent facts and travel of this case follows.

On March 28, 1987, officers from the Pawtucket police department, after attempting unsuccessfully to contact several active justices, presented an application for a search warrant to retired Judge J. Frederick Murphy. The search warrant sought permission to search the first-floor, left apartment of 27

Carver Street in Pawtucket, Rhode Island, for drugs and other paraphernalia associated with drug use and narcotics transactions.

Judge Murphy, after finding the application to be in order, signed the warrant. Later that evening members of the Pawtucket police department executed the search warrant. In defendant's apartment, the police found varying amounts of cocaine, marijuana, diazepam, and various items commonly used in the manufacture, sale, and ingestion of drugs. The defendant was subsequently charged in criminal information No. P2/87–1639A with four criminal offenses: maintaining a narcotics nuisance, possession with intent to deliver cocaine, possession with intent to deliver marijuana, and simple possession of diazepam.

Prior to trial, defendant moved to suppress everything seized from defendant's apartment, as well as defendant's subsequent statement to the police. After that motion was denied, defendant filed a petition for writ of certiorari in this court and requested a stay of further trial proceedings. On October 19, 1989, this court issued an order denying the stay but mandating that defendant not be incarcerated either for want of bail or in implementation of a sentence until this court had an opportunity to consider whether the search warrant was properly issued.

A jury-waived trial commenced thereafter on October 23, 1989, and defendant was subsequently convicted of all four offenses. On December 12, 1989, defendant was sentenced to five years, with four suspended, for count 1 (maintaining narcotics nuisance); fifteen years, with eleven suspended, for counts 2 and 3 (possession with intent to deliver); and one year for count 4 (possession). The sentences were to run concurrently. Pursuant to the October 19, 1989 order, implementation of defendant's sentence was stayed. However, a notice of appeal was never filed by defendant, nor did defendant pursue defendant's original petition for writ of certiorari. The state, therefore, moved to dismiss the original petition for writ of certiorari. On April 12, 1990, this court issued an order denying the state's motion to dismiss and granting the petition for certiorari solely on the issue of the propriety of the Superior

Court justice's denial of the pretrial motion to suppress. In addition, the October 19, 1989 order precluding defendant's incarceration was continued.

This court issued the writ on April 16, 1990. The defendant, however, failed to serve the writ on the clerk of the Superior Court in a timely fashion. Therefore, this court issued an order directing defendant to show cause why the petition for writ of certiorari should not be dismissed for failure of timely service to the Superior Court clerk. At the show-cause hearing on December 20, 1990, defendant demonstrated that the writ had since been served upon the Superior Court clerk and a transcript had been ordered. On that date, this court issued yet another order setting out scheduling requirements and docketed the case on the March 1991 show-cause calendar. When defendant failed to meet the scheduling requirements set forth in the December 20, 1990 order, the state on January 24, 1991 again moved to dismiss the petition. The motion was heard on May 6, 1991, and on May 17, 1991, after counsel for defendant failed to appear, this court issued yet another order, concluding that "counsel for [defendant] has not acted effectively on the [defendant's] behalf" and continuing the case for sixty days in order to afford defendant an opportunity to obtain substitute counsel. The public defender thereafter entered an appearance on behalf of defendant and ordered the transcript. Now, some three and one-half years later, we finally reach the issue of whether Judge Murphy had authority to issue the search warrant.

The defendant maintains that the search warrant was void *ab initio* because Judge Murphy lacked authority to sign search warrants. According to defendant, G.L.1956 (1981 Reenactment) § 12–5–1 and Rule 41(a) of the Superior Court Rules of Criminal Procedure empower only *active* judges with the authority to issue search warrants. The defendant maintains that the very language of the 1969 Judicial Reorganization Act, the act under which Judge Murphy retired and was allegedly granted authority, limits retired justices' authority to temporary assignments to preside over cases being litigated in court.

Otherwise, according to defendant's interpretation, retired justices "shall have no such powers nor be authorized to perform any judicial duties." P.L.1969, ch. 239, § 58.

The state, predictably, promotes a contrary viewpoint by averring that Judge Murphy's authority to issue search warrants derives from P.L.1969, ch. 239, § 58, the 1969 Judicial Reorganization Act. According to the state, Judge Murphy's 1970 reappointment, after retirement, as an associate justice of the District Court was not a temporary appointment but was a general appointment entitling Judge Murphy to assume all powers inherent in the position of associate justice until such time as said powers were rescinded or revoked.

District Court judges are granted authority to issue search warrants pursuant to § 12–5–1 and Rule 41(a). Section 12–5–1 provides, "A search warrant may be issued by any judge of the district court." Rule 41(a) similarly provides that a search warrant must be issued by a justice of the Supreme, Superior, or District Court. These sections are notably silent on the authority of retired justices to issue search warrants.

District Court judges retiring in 1969, however, were granted certain powers pursuant to P.L.1969, ch. 239, § 58. We, therefore, look to this provision, which governs Judge Murphy's retirement, to determine whether the 1969 Judicial Reorganization Act provides statutory authority for retired District Court judges to issue search warrants.[1]

Public Laws 1969, ch. 239, § 58, of the 1969 Judicial Reorganization Act reads in pertinent part:

"Any justice of the said court who shall resign in accordance with the provisions of this section may with his own consent and at the request of the chief judge of said court be assigned to perform service as a justice thereof * * *. When so assigned and performing such service, he shall have all the powers and authority of a justice of said district court, but otherwise he shall have no such powers nor be authorized to perform any judicial duties."

Thus, according to this section, retired justices possess "all the powers and authority" of a District Court judge but only "[w]hen so assigned and performing such service." The state argues that Judge Murphy's initial assignment in 1970 operates to endow him with "all the powers and authority" of a judge until they are rescinded or revoked. In support of this argument, the state directs our attention to the June 1, 1970 letter from former District Court Chief Judge Henry E. Laliberte and to the oath of affirmation taken by Judge Murphy on June 8, 1970. Chief Judge Laliberte's letter requested Judge Murphy to "consent to be assigned to perform the service in the District Court as an Associate Justice thereof." After accepting Judge Laliberte's request, Judge Murphy took an oath whereby he swore to "discharge and perform all the duties incumbent on [him] as Associate Justice of the District Court."

■ After careful review of the pertinent statutes and the documents admitted into evidence, this court finds that Judge Murphy lacked the authority to issue the search warrant in this case. The authority to issue warrants must necessarily derive from a specific statutory provision. The 1969 Judicial Reorganization Act, however, grants retired justices all the powers and authority of a District Court judge, *only* "[w]hen so assigned and performing such service." P.L. 1969, ch. 239, § 58.

In the instant case, Judge Murphy was intermittently assigned to sit in the District Court during approximately 1970 through 1975, the first five years of his retirement. Subsequent to 1975, however, Judge Murphy had been assigned only "sparingly." Although Judge Murphy could not remember the exact date that he was last assigned to sit in District Court, he informed the Superior

---

1. District Court judges who retired in 1969 did so "in accordance with" P.L.1969, ch. 239, § 58. As of 1970, however, District Court judges retire in accordance with the provisions of § 8–3–7. *See* an Act Relating to the Retirement of Justices of the Supreme, Superior, Family and District Courts. P.L. 1970, ch. 300, § 1 (codified at G.L. 1956 (1985 Reenactment) § 8–3–7). The authority granted to Judge Murphy in P.L. 1969, ch. 239, § 58 is identical to that granted to his successors pursuant to § 8–3–7.

Court that he had not been assigned judicial duties by the current chief judge of the District Court, Chief Judge Albert DeRobbio. Judge DeRobbio succeeded Judge Laliberte as Chief Judge of the District Court in 1987. Given these facts, this court finds that at the time Judge Murphy signed the search warrant, he was not assigned and performing as a District Court judge; thus, he lacked authority *de jure* to issue the search warrant.

The state argues, alternatively, that even if Judge Murphy lacked statutory authority to issue the warrant, he possessed authority as a *de facto* judge. A review of our case law reveals that the doctrine of *de facto* judge has been addressed only in a concurring opinion. *Ranalli v. Edwards,* 98 R.I. 394, 400–01, 202 A.2d 516, 519–20 (1964) (Condon, C.J., concurring). This court, however, has never adopted the *de facto* judge doctrine, although we have relied favorably on the doctrine of *de facto* officers. *See State v. Ramsdell,* 109 R.I. 320, 329–30, 285 A.2d 399, 405–06 (1971); *LaBelle v. Hazard,* 91 R.I. 42, 47–48, 160 A.2d 723, 725 (1960) (holding that where *de jure* officer in no way acquiesced in his removal from office, he is entitled to the salary of the office regardless of whether a *de facto* officer has already been paid by the governmental body); *Apice v. American Woolen Co.,* 74 R.I. 425, 434–35, 60 A.2d 865, 870 (1948) (deciding that even though a workers' compensation hearing officer lacked *de jure* authority to hear and decide cases, he possessed authority as a *de facto* official). In *Apice* we defined a *de facto* official to be " '[o]ne who has the reputation of being the officer he assumes to be and yet is not a good officer in point of law.' This reputation may be founded on color of title or on possession of any office as acquiesced in by the public." 74 R.I. at 435, 60 A.2d at 870.

▮ The rationale for the *de facto* doctrine is based on principles of policy and justice. *State v. Smejkal,* 395 N.W.2d 588, 590 (S.D. 1986). Long ago the Supreme Court of Connecticut, after an extensive review of American and English case law regarding this doctrine, stated:

"[A]s a rule of policy: 'If you find a man executing the duties of an office, under

such circumstances of continuance, reputation, or otherwise, as *reasonably authorize the presumption* that he is the officer he assumes to be * * * the law will hold his acts valid as to you, by holding him to be, so far forth, an officer *de facto.*' " (Emphasis added.) *State v. Carroll,* 38 Conn. 449, 467 (1871).

▮ Keeping this concept in mind, we are of the opinion that under the facts of the instant case, the policy behind the *de facto* doctrine will not be served by validating Judge Murphy's acts. Nothing in the statutes or documents submitted would lead one to reasonably presume that Judge Murphy had even a "color of authority" to issue the warrant. It is an impermissible stretch of our analytical capabilities to view as reasonable the presumption that a retired justice has continuing judicial power seventeen years after retirement. Furthermore, the 1970 reappointment does not provide a "color of authority" because it expressly limited Judge Murphy's judicial powers to periods when he was assigned and performing services in District Court. P.L.1969, ch. 239, § 58. Theoretically, P.L.1969, ch. 239, § 58, could allow the District Court to call on Judge Murphy to sit on the bench today, in 1993. Such a latent capacity does not, however, rise to a present authority, nor does it rise to a color of authority. The fact that Judge Murphy has been performing marriages also does not support the state's argument because retired justices are expressly granted that authority pursuant to G.L.1956 (1988 Reenactment) § 15–3–5. No comparable statute grants Judge Murphy direct authority or color of authority to issue search warrants unless he is actively engaged in judicial duties. *See* P.L.1969, ch. 239, § 58. Therefore, under the facts of this case, we find that Judge Murphy lacked *de facto* authority to issue the search warrant, despite his signing the warrant with the good-faith intention of continuing his long commitment to public service.

▮ We also note that there has been no allegation on behalf of defendant that probable cause supporting the search warrant was lacking or that the police officers acted with anything but good faith. But despite our

sensitivity to the dangers of illegal drug activity, the public must also be protected from unconstitutional and illegal searches and seizures. Rhode Island Const., art. 1, sec. 6. This protection extends to those suspected of being, or known to be, offenders as well as to the innocent. *McDonald v. United States,* 335 U.S. 451, 453, 69 S.Ct. 191, 192, 93 L.Ed. 153, 157 (1948). Procedural safeguards, such as the requirement that an active justice of the District, Superior, or Supreme Court sign the warrant, have been developed in order to guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects." U.S. Const. Amend. IV. Such safeguards provide restraints against unreasonable searches and seizures. Because one of the safeguards has been violated in the case before us, we are bound to find the warrant invalid.

At this time we decline to consider whether we shall adopt the "good faith exception" rule propounded in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984). We note that even were this court to adopt *Leon*'s good-faith-exception rule, that rule would be inapplicable in this case because, without being signed by a magistrate with either *de jure* or *de facto* authority, the search warrant is void *ab initio.* Thus, we reserve consideration of the goodfaith-exception rule for another time.

Accordingly, for the reasons stated, the petition for certiorari is hereby granted, the judgment of conviction is quashed, and the case is remanded to the Superior Court with our decision endorsed thereon.

FAY, C.J., did not participate.