Francis PELLEGRINO et al.

v.

The RHODE ISLAND ETHICS COMMISSION et al.

No. 2000–132–Appeal.

Supreme Court of Rhode Island.

Jan. 30, 2002.

Keven A. McKenna, Providence, for Plaintiff.

Rebecca Tedford Partington, Cumberland, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

A state statute provided for certain public officials, who were formerly members of a state governmental agency, to receive a designated compensation for attending agency meetings during a specific period.

Can the agency and the defendant state treasurer invoke sovereign immunity to fend off the public officials' attempt to obtain a declaratory judgment concerning their alleged right to recover the statutory compensation due to them for attending these meetings? Because the state has waived its sovereign immunity by enacting a statute providing for the compensation in question and because the public officials' alleged performance of the statutory conditions for obtaining payment created a legitimate claim of entitlement to this statutory benefit, we answer this question in the negative.

The plaintiffs, former members of defendant, Rhode Island Ethics 'Commission (commission),[1] contend that the Superior Court erred when it concluded that the doctrine of sovereign immunity barred them from suing the commission and the Treasurer of the State of Rhode Island (state), to obtain declaratory and other relief concerning the compensation allegedly due and owing to them for attending various commission meetings in 1991 and 1992. They appeal from a judgment dismissing their complaint pursuant to Rule 12(b)(1) and (6) of the Superior Court Rules of Civil Procedure. After a pre-briefing conference, a single justice of this Court ordered the parties to show cause why the appeal should not be summarily decided. Because neither party has done so, we proceed to decide the appeal without further briefing or argument.

## Facts and Travel

On January 1, 1991, then Governor Bruce Sundlun, in response to a banking crisis and a large state budget deficit, issued an executive order suspending the pay of all persons serving on Rhode Island state boards and administrative agencies, including the commission. Shortly thereafter, the General Assembly ratified the Governor's action by passing various acts suspending the pay of commission members. Thus, on February 15, 1991, the Legislature passed P.L.1991, ch. 6, art. 29, suspending the pay of the commission members for the rest of 1991 and for fiscal year 1992. Thereafter, however, on June 7, 1991, the General Assembly enacted P.L.1991, ch. 44, art. 77. This article allowed those members of commissions who performed adjudicatory functions, including plaintiffs, to receive compensation retroactive to February 15, 1991. Thereafter, on July 14, 1992, the General Assembly passed P.L.1992, ch. 133, art. 9, which suspended the pay of members of commissions and boards for fiscal year 1993, without retaining the previous exception for commission members who performed adjudicatory functions. The General Assembly continued to suspend the pay of commission members from fiscal year 1993 through 1998.

Under G.L.1956 § 36–14–8(i), commission members were entitled to receive $100 per day "as compensation for attendance at meetings * * * but not to exceed the sum of six thousand dollars ($6,000) annually as compensation of each member." Section 36–14–13 clearly provides that the commission exercises adjudicative powers. The plaintiffs argue that as commission

---

**1.** The plaintiffs are Francis Pellegrino, Michael Morry, Mel Topf, Peter Davis, Cheryl Fisher, Paul Gains, Richard McAllister, John O'Brien, William Rizzini, Roger Hall and Joan M. Giampietro. The defendants are The Rhode Island Ethics Commission and Paul Tavares (Tavares), in his capacity as Treasurer of the State of Rhode Island (state). Given that plaintiffs originally named Nancy Mayer as a party defendant to this action in her official capacity as state Treasurer, and given that she has ceased to hold that public office during the pendency of this action, her successor, Tavares, has been automatically substituted as a party herein. *See* Rule 25(d) of the Superior Court Rules of Civil Procedure.

members performing adjudicatory functions, they were entitled to compensation pursuant to P.L.1991, ch. 44, art. 77, for attending various commission meetings from February 15, 1991, to July 14, 1992, the date when the General Assembly suspended commission members' pay without including an exception for members performing adjudicatory functions. Believing they were not entitled to demand payment from the commission while they were still serving as members, plaintiffs waited until their terms expired before filing this action on September 9, 1998. They sought, among other relief, the compensation that they were denied for the period from February 15, 1991, to July 14, 1992. Their complaint against the defendant commission and the state included counts for breach of contract (count 1), declaratory judgment counts for violation of article 3, section 8, of the Rhode Island Constitution, and violation of P.L.1991, ch. 44, art. 77 (counts 2 and 3), promissory estoppel (count 4), and quantum meruit (count 5).

Thereafter, defendants filed a motion to dismiss pursuant to Rule 12(b)(1) and (6). Viewing the case as an action for back wages, the motion justice concluded that defendants had not waived the state's sovereign immunity. Believing that the doctrine of sovereign immunity, therefore, barred this lawsuit, the motion justice granted the motion to dismiss and entered judgment in favor of defendants.

On appeal, plaintiffs argue that the legislation suspending their pay as "constitutional adjudicative officers" during their terms of office was unconstitutional. They assert that the doctrine of sovereign immunity cannot defeat their claims against defendants because the legislation in question "is tantamount to abolishing their positions" and "undermines a constitutional function." They also aver that defendants' failure to pay them for the services they rendered to the commission violates the just-compensation guarantees in the state and federal constitution—protecting them against the government's uncompensated takings of their private property for public use—because they possessed a vested property right to the statutory stipend for the meetings they attended during the 1991–1992 period when the General Assembly provided for them to receive such compensation and because defendants' failure to pay them took this property right from them for the public's use without just compensation.

The plaintiffs further argue that the General Assembly's enactment of § 36–14–8(i) and P.L.1991, ch. 44, art. 77—providing for them to receive a specific monetary stipend for attending commission meetings—necessarily waived the state's sovereign immunity for claims to recover the stipend. They contend that the express provisions of these laws demonstrate that they were entitled to be compensated for attending meetings during the period in question. In essence, they argue, the above legislation, providing for compensation to be paid to the commission members who attended the meetings in question, operated to waive the state's sovereign immunity. Finally, they suggest, the motion justice erred in failing to declare the rights of the parties.

The defendants respond that plaintiffs' claim is statutory in nature, not constitutional. They maintain that the General Assembly had the power to suspend payments to commission members through later-enacted legislation. They suggest that plaintiffs may not rely on contract theory, property rights, or estoppel doctrines to limit the General Assembly's prerogative to revise legislation concerning the compensation due to commission members. In addition, they argue, plaintiffs' claims for the period from February 1991

through July 1992 are barred by the doctrine of sovereign immunity. They contend that the state has not expressly waived its sovereign immunity from suit in actions seeking statutory benefits related to government employment. They posit that sovereign immunity must be expressly waived, and they argue that the state only has done so for actions sounding in tort and for certain claims involving public-works contracts. In addition, defendants insist, sovereign immunity specifically precludes declaratory-judgment actions against the state, citing *Rhode Island Turnpike and Bridge Authority v. Nugent*, 95 R.I. 19, 182 A.2d 427 (1962). Finally, defendants maintain, plaintiffs' action is time barred because, even if the state had waived its sovereign immunity, the applicable limitations period is usually three years for waived-immunity cases. Here, however, plaintiffs filed the lawsuit more than six years after the complained-of harm had occurred.

## Analysis

### Standard of Review

■ The standard for granting a motion to dismiss is a difficult one for the movant to meet. "When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a plaintiff's favor." *Rhode Island Affiliate, American Civil Liberties Union, Inc. v. Bernasconi*, 557 A.2d 1232, 1232 (R.I.1989). "The motion may then only be granted if it 'appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any conceivable set of facts. * * *.'" *Estate of Sherman v. Almeida*, 747 A.2d 470, 473 (R.I.2000) (quoting *Bernasconi*, 557 A.2d at 1232). "When this Court reviews a trial justice's granting of a Rule 12(b)(6) motion, we assume that the

allegations contained in the complaint are true, and examine the facts in the light most favorable to the nonmoving party." *Estate of Sherman*, 747 A.2d at 473.

### Statutory Entitlement and Sovereign Immunity

■ The key legal issue in this case concerns whether the doctrine of sovereign immunity bars plaintiff's claims for monies allegedly due and owing to them pursuant to a statute that entitled them to receive compensation from the commission for their attendance at various commission meetings. We shall also assume, without deciding, that even though the commission is an independent, nonpartisan entity established by the General Assembly pursuant to art. 3, sec. 8, of the Rhode Island Constitution, it still possesses sufficient governmental attributes to invoke sovereign immunity if that doctrine were otherwise applicable to the claims at issue.

■ This Court has held that the "Legislature is presumed not to have relinquished any part of the state's sovereign power unless [its] intent to do so [has been] 'clearly expressed or arises by necessary implication from the [relevant] statutory language.'" *International Depository, Inc. v. State of Rhode Island*, 603 A.2d 1119, 1122 (R.I.1992) (quoting *Andrade v. State*, 448 A.2d 1293, 1295 (R.I. 1982)). "A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." *Kawananakoa v. Polyblank*, 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834, 836 (1907) (Holmes, J.).

■ In examining the legislation relied upon by plaintiffs, however, it appears to us that a waiver of the state's sovereign immunity has been accomplished by neces-

sary implication from the very statutory terms that provided for specific compensation to be paid to commission members for attending commission meetings during the period of February 15, 1991, through July 14, 1992. In *LaBelle v. Hazard,* 91 R.I. 42, 46–47, 160 A.2d 723, 725 (1960) this Court stated that "[t]he salary of a public official is an incident to the office, and *the legal right to receive or enforce the payment thereof goes with the legal title thereto.*" (Emphasis added.); *cf. State Employees' Association of New Hampshire, Inc. v. Belknap County,* 122 N.H. 614, 448 A.2d 969, 972–73 (1982) ("Because the existence of a right to receive [government-employment] benefits implies the existence of an appropriate remedy for recovering these benefits, we hold that the * * * statute contains an implicit waiver of sovereign immunity."). And because "[t]he Legislature is [ ] presumed to know the state of existing relevant law when it enacts a statute," *State v. Reis,* 430 A.2d 749, 752 (R.I. 1981), the General Assembly must be deemed to have known that, upon passing legislation providing for compensation to be paid to commission members for attending meetings, it was providing this compensation as an incident to the public offices they held and that their legal right to enforce the payment thereof accompanied their legal title to their offices.

■ ■ Moreover, under the Uniform Declaratory Judgments Act, G.L.1956 chapter 30 of title 9, public officers are entitled to have their legal rights and duties determined judicially in an action for a declaratory judgment, and the state itself and its public officers now can be joined as proper parties to such an action. *See, e.g., Capital Properties, Inc. v. State,* 749 A.2d 1069, 1081 (R.I.1999); *see also* G.L.1956 § 42–35–8 ("Declaratory rulings by agencies. Each agency shall provide by rule for the filing and prompt disposi-

tion of petitions for declaratory rulings as to the applicability of any statutory provision or of any rule or order of the agency. Rulings disposing of petitions have the same status as agency orders in contested cases."). Further, "claims for affirmative relief, such as those for money damages, may be joined to the declaratory judgment action pursuant to 'the liberal provisions of Rule 18 of the Superior Court Rules of Civil Procedure.'" *Capital Properties, Inc.,* 749 A.2d at 1080. To the extent that *Rhode Island Turnpike and Bridge Authority v. Nugent,* 95 R.I. 19, 182 A.2d 427 (1962) (holding that one state agency cannot sue another state agency under the declaratory judgment act) might suggest otherwise, or that state agencies and public officials are not subject to suit at all for declaratory or other relief because of their sovereign immunity, we decline to read that decision so broadly, concluding, rather, that its scope should be confined to actions between state agencies.

This is not the first time this Court has decided that the state or a municipality has impliedly waived sovereign immunity. *See, e.g., Capital Properties, Inc.,* 749 A.2d at 1081; *Donnelly v. Town of Lincoln,* 730 A.2d 5, 10 (R.I.1999); *Reagan Construction Corp. v. Mayer,* 712 A.2d 372, 374 (R.I.1998). In *Donnelly,* for example, a municipality voluntarily joined the state workers' compensation system and, in doing so, it received the advantages of participating therein. As a result, we held, the town had impliedly waived sovereign immunity and was not insulated from an award of interest for the money it owed to an injured town employee.

■ In this case, the state voluntarily enacted a statute providing for compensation to be paid to commission members for attending meetings during a specific period. Thereafter, the commission allegedly obtained and retained the benefits of the

services provided to it by plaintiffs while the compensation statute was in full force and effect. Allowing the state and its boards and commissions to invoke sovereign immunity when public officials seek to collect the compensation they are statutorily entitled to receive for services rendered would defy the principle that all legislation should be construed in such a manner as to give meaning and substance to each provision of the law. *See, e.g., Pullen v. State*, 707 A.2d 686, 691 (R.I. 1998); *see also In re Estate of Gervais*, 770 A.2d 877, 880 (R.I.2001).

For this reason, we hold that the very statutory provisions in question entitling plaintiffs to receive such compensation were tantamount to a waiver of the state's sovereign immunity if those provisions are to be saved from a mere nugatory existence or an unconstitutional application of the doctrine in question. *See Reis*, 430 A.2d at 752 ("in enacting a statute the legislature is presumed to have intended that every word, sentence, or provision has some useful purpose and will have some force and effect."); *LaBelle*, 91 R.I. at 46–47, 160 A.2d at 725 (holding that the legal right of a public official to receive or enforce the payment of compensation to that official "goes with" the official's legal title to the office); *see also National Education Association–Rhode Island v. Retirement Board of Rhode Island Employees' Retirement System*, 890 F.Supp. 1143 (D.R.I.1995) (statute extending benefits to employees created implied-in-fact contract which, when extinguished, violated contract and takings clauses). "[I]n our opinion justice requires that the public treasury be made to respond" in these circumstances, LaBelle, 91 R.I. at 47, 160 A.2d at 725, because "we cannot agree that the public good would be served by denying to a public officer that compensation to which he [or she] is entitled by law." *Id.*

1 Courts in other states have held that the state, by enacting a statute that entitled certain public officials to receive compensation for the services they performed for the state, thereby agreed to be answerable in a declaratory judgment action and, if necessary, in a petition for supplemental relief ("[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper," § 9–30–8) for allegedly violating the law requiring such compensation to be paid; and that, by necessary implication, the very enactment of the statute waived the state's immunity from suit—at least after the public officials allegedly had earned the right to be paid and the statute in question was still extant when the court ruled on the claim. *See, e.g., Belknap County*, 448 A.2d at 972–73. "Any other conclusion would ascribe to the General Assembly an intent to profit the State at the expense of its citizens." *George & Lynch, Inc. v. State*, 197 A.2d 734, 736 (Del.1964). Indeed, allowing such an official repudiation of earned official compensation would be "to sanction the highest type of governmental tyranny." *Ace Flying Service, Inc. v. Colorado Department of Agriculture*, 136 Colo. 19, 314 P.2d 278, 280 (1957). Moreover, in enacting a statute providing for compensation to be paid to government officials in exchange for services rendered to the state or to one of its agencies, the state, we hold, was acting as a private employer would in arranging to compensate its employees. In doing so, "[the state] laid aside its attributes as a sovereign and bound itself substantially as one of its citizens does when he [or she] enters into a contract." *Carr v. State ex rel. Du Coetlosquet*, 127 Ind. 204, 26 N.E. 778, 779 (1891); *cf. Jolicoeur Furniture Co. v. Baldelli*, 653 A.2d 740, 755 (R.I.1995) (holding that because municipality had acted in a proprietary capacity when it

breached a contract to transfer real estate, it was not entitled to assert sovereign immunity).

## Constitutional Protections and Sovereign Immunity

▆▆ The statute providing for compensation to be paid to the commission members for their attendance at meetings in 1991 and 1992—coupled with the members' alleged attendance at meetings during this period—also vested them with a protected property interest under the Rhode Island Constitution and entitled them to receive the compensation provided for by statute.[2] Here, the statute operated to confer on commission members a legitimate claim of entitlement to receipt of the compensation in question. Thus, once the members attended the meetings in question, the statute endowed plaintiffs with a property interest in the statutory benefit that could not be taken from them for the public's use without due process of law and just compensation. *See Barber v. Exeter— West Greenwich School Committee,* 418 A.2d 13, 19–20 (R.I.1980); *Lynch v. Gontarz,* 120 R.I. 149, 156–57, 386 A.2d 184, 188 (1978); *see also Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570, 580 (1972) ("[a] person's interest in a benefit is a 'property' interest * * * if there are such rules or

mutually explicit understandings that support his [or her] claim of entitlement to the benefit * * * ").

In sum, we hold that the state laid aside whatever sovereign immunity it otherwise possessed with respect to its obligation to pay these government officials for attending commission meetings when it bound the commission to comply with its statutory responsibility of paying a specific compensation to its members after they had earned the right to receive the compensation provided for by the statute. *See V.S. DiCarlo Construction Co. v. State,* 485 S.W.2d 52, 54 (Mo.1972). For these reasons, we hold that the state waived its sovereign immunity for compensation claims arising out of commission members attending commission meetings during the February, 1991, through July, 1992, period.

## Protection of Constitutional Adjudicatory Officials

▆▆ With respect to plaintiffs' more sweeping assertion that, as adjudicatory government officials, their compensation could not be diminished during their continuance in office, such a position enjoys no support from the Rhode Island Constitution. Indeed, only the justices of this Court enjoy such constitutional protection. R.I. Const., art. 10, sec. 6 ("The judges of the supreme court shall receive a compen-

---

**2.** Even if we were to assume, *arguendo,* that before plaintiffs became entitled to receive the compensation in question, the state could have repealed this statute retroactively without the commission incurring any liability to plaintiffs, it did not do so. Thus, the cases of this Court refusing to convert statutory benefits into enforceable contract rights that cannot be repealed legislatively without the state incurring liability to such claimants, *see, e.g., D. Corso Excavating, Inc. v. Poulin,* 747 A.2d 994 (R.I.2000) and *Retired Adjunct Professors v. Almond,* 690 A.2d 1342 (R.I.1997) are inapplicable to this situation because no such re-

peal has occurred with respect to the statutory period in question. Moreover, unlike the situation in the above-cited cases, plaintiffs in the case at bar acquired a vested property right to receive the compensation when they attended commission meetings during the period when such compensation was due to them. In other words, the statutory benefit in question was no longer merely executory. Rather, the statute's beneficiaries had earned the right to receive the stipend and thereby became entitled to its receipt under a statute that was still extant when the Court decided this case.

sation for their services, which shall not be diminished during their continuance in office."). The judges of inferior courts, however, as well as other government officials such as plaintiffs who may perform adjudicatory functions, do not enjoy such constitutional protection against diminishment of their compensation during their continuance in office. *See Gorham v. Robinson,* 57 R.I. 1, 37, 186 A. 832, 850 (1936). Thus, the state's prospective suspension of the members' statutory compensation from 1993 forward did not violate plaintiffs' rights because plaintiffs were free to resign their offices if they did not wish to serve without compensation.

### Statute of Limitations

■ Finally, the state suggests, the appropriate statute of limitations is three years for claims in which it has waived sovereign immunity. But we disagree and conclude instead that G.L.1956 § 9-1-13(a), containing the catchall ten-year statute of limitations, is applicable to these claims to enforce statutory benefits because they do not fall within any of the other specific statutory provisions providing for shorter periods of limitation.

### Conclusion

For these reasons, we conclude, the defendants were not entitled to invoke the state's sovereign immunity in regard to claims for statutory compensation owed to commission members during the 1991–92 period when such compensation ought to have been paid to them, and that the plaintiffs' complaint was timely filed. However, we are of the opinion that, as a matter of proper administrative procedure and for the purpose of allowing the plaintiffs to exhaust their administrative remedies, the Superior Court on remand should stay further proceedings and return this case to the commission so that such claims can be presented to the commission in the first instance, thereby enabling it to declare just how much compensation is owed to each individual plaintiff pursuant to § 42-35-8 (requiring each agency to provide for "prompt disposition of petitions for declaratory rulings as to the applicability of any statutory provision" and treating such rulings "as agency orders in contested cases"), based on the number of commission and qualifying subcommittee meetings each former member attended during the period in question. Thereafter, if the plaintiffs do not receive payment from the commission to their satisfaction, they can appeal the commission's order to the Superior Court under § 42-35-15 and also seek the entry of a final judgment against the defendants consistent with this opinion. *See* § 36-14-15 (providing that "[a]ny action by the commission made pursuant to this chapter shall be subject to review pursuant to chapter 35 of title 42 [the Administrative Procedures Act]"). Therefore, we sustain the plaintiffs' appeal in this regard, reverse the motion justice, vacate the order and judgment dismissing the plaintiffs' complaint, and remand the case to the Superior Court for further proceedings consistent with this opinion.

FLANDERS, J., concurring.

I write separately to note what I consider to be the legal consequences of the Court's holding in this case that the plaintiffs acquired a protected property interest in the statutory benefit in question (a compensatory stipend for attending commission meetings). If, as alleged in the complaint, the plaintiffs attended the commission's meetings during the period when the statute required the commission to pay such compensation, then the defendants' alleged failure to compensate the plaintiffs would operate to take that property interest from them for the public's use without paying the plaintiffs just com-

pensation. The takings clause of the Rhode Island Constitution provides that "[p]rivate property shall not be taken for public uses, without just compensation." R.I. Const. art. 1, sec. 16. Furthermore, this clause is a self-executing provision of our Constitution that needs no supplemental legislation to create a private cause of action for damages. *See Bandoni v. State,* 715 A.2d 580, 599 (R.I.1998) (citing *Annicelli v. Town of South Kingstown,* 463 A.2d 133 (R.I.1983)). *See also DeBry v. Noble,* 889 P.2d 428, 439 (Utah 1995) (adages such as " 'the sovereign can do no wrong' " or "the law giver cannot be made subject to a lawsuit" do not provide a valid rationale for a state sovereign's immunity from alleged state constitutional violations); *cf. Jones v. State of Rhode Island,* 724 F.Supp. 25, 35 (D.R.I.1989) (Lagueux, J.) (holding that the Rhode Island State Constitution's due-process clause in art. 1, sec. 2, was added in 1986 to " 'create an independent state foundation for individual rights' " and thereby established "an implicit right to sue state actors for damages for violations of this newly created right").

As the Connecticut Supreme Court has observed "[s]overeign immunity does not protect [the] state * * * from suits to recover property taken or [held] in violation of the constitution or without statutory authority, even though the property is held in the name of the state * * *." *Simmons v. Parizek,* 158 Conn. 304, 259 A.2d 642, 643 (1969). The principle of sovereign immunity, although deeply rooted in the common law, must give way to constitutional provisions like the just-compensation clause because "the source of governmental power and authority is not vested by divine right in a ruler but rests in the people themselves who have adopted constitutions creating governments with defined and limited powers and courts to interpret these basic laws." *Horton v. Meskill,* 172 Conn. 615, 376 A.2d 359, 363 (1977). Perhaps the King could do no wrong, but a "government of the people, by the people, [and] for the people"[3] is neither so infallible nor so immune from suit as monarchical regimes.

Moreover, it would be inconsistent to hold, on the one hand, that the people of this state have a constitutional right to just compensation for governmental takings of private property for public uses, while, on the other, holding that they are prevented from suing the state government to obtain just compensation because of sovereign immunity. *Cf. Corum v. University of North Carolina,* 330 N.C. 761, 413 S.E.2d 276, 292 (1992) ("when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail"). Furthermore, it is a bedrock principle of legal construction that constitutional rights trump common-law doctrines like sovereign immunity. "In a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts." *Sentner v. Board of Trustees of Regional Community Colleges,* 184 Conn. 339, 439 A.2d 1033, 1036 (1981). Therefore, because in this state, as in other jurisdictions, "the doctrine of sovereign immunity is not a constitutional right; [but] a common law theory or defense established by [courts] * * * when there is a clash between these * * * rights * * *, the constitutional rights must prevail." *Corum,* 413 S.E.2d at 292.

For these reasons, and for those set forth in the Court's opinion, which I join, I concur with the disposition of this appeal.

---

**3.** Abraham Lincoln, The Gettysburg Address  (Nov. 19, 1863).