RHODE ISLAND TURNPIKE AND BRIDGE AUTHORITY *vs.* J. JOSEPH NUGENT *et al.*

JUNE 26, 1962.

PRESENT: Condon, C. J., Roberts, Paolino and Frost, JJ.

FROST, J. This is a petition for a declaratory judgment to which the respondent Mount Hope Bridge Authority filed a motion to dismiss for lack of jurisdiction. From a decree of the superior court denying the motion the said respondent has duly prosecuted an appeal to this court.

From the petition it appears that Jamestown Bridge Commission, hereinafter referred to as the Commission, was created as a public corporation and an agency of the state by P. L. 1937, chap. 2536, as amended, for the purpose of erecting a bridge between the towns of Jamestown and North Kingstown with power to issue bonds and accept grants from the federal government; that bonds were issued and a grant obtained therefrom; that the Jamestown bridge was erected and completed in 1940; that the said revenue bonds are secured by a trust indenture dated October 1, 1944, of which Rhode Island Hospital Trust Company is the trustee for the benefit of the bondholders; and that when said bonds are paid title to the bridge vests in the state.

That Mount Hope Bridge Authority, hereinafter referred to as the Mount Hope Authority, was created by P. L. 1954, chap. 3391, as amended, now G. L. 1956, chap. 13 of title 24, for the purpose of acquiring the Mount Hope bridge; that it acquired the bridge in 1955 through the issuance of bonds which are secured by an indenture of trust dated December 1, 1955 for the benefit of the holders there-

of of which Industrial National Bank of Providence, Rhode Island, is the trustee; and that when the said bonds are paid Mount Hope bridge will become toll free and the property of the state.

The petitioner, also referred to herein as the Rhode Island Authority, was authorized by P. L. 1954, chap. 3390, now G. L. 1956, chap. 12 of title 24, to issue its bonds to retire the outstanding bonds of the Commission and the Mount Hope Authority, to construct the Newport bridge, to use the tolls of all three bridges for said purposes, and to acquire title to the Jamestown bridge and the Mount Hope bridge, following which the Mount Hope Authority and the Commission will be automatically dissolved.

That the Rhode Island Authority is also authorized to combine for financing purposes the Newport bridge, the Jamestown bridge and the Mount Hope bridge, which three valuable facilities will be an integral part of the highway system of the state and will be transferred to the state upon the retirement of all bonds issued by the Rhode Island Authority.

That petitioner cannot finance any of its authorized projects or carry on the functions for which it has been created until certain legal questions are determined and it can market its bonds.

That serious legal questions have been raised concerning the powers, rights and legal status of the Rhode Island Authority and particularly its power to issue revenue bonds for the purpose of paying the cost of acquiring the Jamestown bridge and the Mount Hope bridge, of paying the cost of the construction of the Newport bridge, and of making provisions for working capital and reserve for interest.

Thereafter petitioner sets forth in considerable detail eleven questions which it prays be answered. Following the filing of the petition and service upon respondents. various motions and pleadings were filed which it is unnecessary to consider at this time.

On July 24, 1961 Mount Hope Authority, appearing specially in the superior court filed its motion "that the petition commencing this action be dismissed insofar as it pertains to the Mount Hope Bridge Authority for the reason that this court is without jurisdiction over the Mount Hope Bridge Authority, it being an instrumentality of the State of Rhode Island, and neither it nor the State of Rhode Island having consented to suit being brought against it."

On December 7, 1961 the superior court entered a decree denying and dismissing the motion. The provisions of such decree are as follows:

"1. The provisions of Title 9-30-13 specifically authorize the Mount Hope Bridge Authority as a proper party respondent in the pending petition.

"2. In spite of the absence of the power to sue and be sued, in Title 24-13, that power is inherent in the Mount Hope Bridge Authority, unless the Doctrine of State Immunity applies.

"3. The Doctrine of State Immunity does not apply to the Mount Hope Bridge Authority because it is not a direct State agency, but is a legal corporation entirely separate, independent and distinct from the State.

"4. The Doctrine of State Immunity does not apply to the Mount Hope Bridge Authority because the pending petition seeks no damages and no affirmative or coercive relief against the State or against its assets; but only a declaration of legal status and rights for the guidance of the various parties which is the primary purpose of the Uniform Declaratory Judgment Act.

"For the above reasons, the motion of the Mount Hope Bridge Authority to dismiss for lack of jurisdiction is denied and dismissed and said authority may file its answer on or before December 12th, 1961."

As the respondent Mount Hope Authority was in doubt whether to come to this court by appeal or by bill of exceptions it has taken both courses. We are of the opinion that an appeal is the proper method. *Newport Amusement Co.* v. *Maher,* 92 R. I. 51, 166 A.2d 216. The bill of exceptions is therefore dismissed pro forma.

A basic question presented by the appeal and on which the parties are diametrically opposed is: Is the Mount Hope Authority a direct state agency or is it a legal corporation entirely separate, independent and distinct from the state? To answer this question it is necessary to consider the language and the purpose of the act incorporating it.

General laws 1956, §24-13-2, provides for the creation within the department of public works of a body corporate and politic to be known as the "Mount Hope bridge authority" which is to function as a unit independent of the director and not subject to his jurisdiction. The authority is to consist of five members of whom one is the director of public works, ex officio, and four of whom are to be appointed by the governor.

Section 24-13-4 provides that the members are not entitled to compensation but shall be reimbursed for their expenses.

Section 24-13-5 authorizes the authority to acquire the Mount Hope bridge, to maintain, repair and operate it and to issue bonds payable from revenue to finance the same.

Section 24-13-6 provides that such revenue bonds shall not be deemed to constitute a debt of the state or of any political subdivision thereof or a pledge of the faith and credit of the state or of any such political subdivision but shall be payable solely from the funds provided therefor from revenues.

Section 24-13-7 states that all expenses incurred in carrying out the provisions of the act shall be payable solely from funds provided under the provisions of the act.

Section 24-13-8 authorizes the authority (a) to issue bonds and to refund the same; (b) to borrow money in anticipation of the issuance of bonds; (c) to fix and revise and charge and collect tolls for the use of the Mount Hope bridge; (d) to acquire, hold and dispose of real and personal

property in the exercise of its powers and the performance of its duties; (e) to acquire in the name of the authority by purchase or otherwise or by condemnation, the Mount Hope bridge; (f) to hire employees and fix their compensation; (g) to enter into contracts with the department of public works for maintenance and repair of said bridge; (i) and to do all other acts necessary to carry out the powers granted under the act.

Section 24-13-9 authorizes the authority to purchase, solely from funds provided under the authority of this act, the Mount Hope bridge.

Section 24-13-11 gives the right to acquire Mount Hope bridge by eminent domain.

Section 24-13-17 gives the right to issue bonds for the payment of the cost of the bridge.

Section 24-13-20 authorizes the authority to fix, revise, charge and collect tolls for the use of the Mount Hope bridge.

Section 24-13-24 provides that the exercise of the powers granted by this act "shall be in all respects for the benefit of the people of the state of Rhode Island, for the increase of their commerce, transportation and prosperity and for the improvement of their health and living conditions, and as the acquisition, operation and maintenance by the authority of the Mount Hope bridge will constitute the performance of essential governmental functions, the authority shall not be required to pay any taxes or assessments upon such bridge or upon any property acquired or used by the authority under the provisions of this act or upon the income from such bridge, and the bonds issued under the provisions of this act, their transfer and the income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation within the state of Rhode Island."

Section 24-13-29 requires the authority to make an annual report to the governor and to the general assembly.

The state director of administration shall cause to be made an annual audit the cost of which shall be a part of the cost of operation.

From the foregoing it is clear that the Mount Hope Authority is a nonprofit organization, that its officers receive no compensation, that it is self-supporting, that it is not required to pay taxes, that it reports annually to the state, that the tolls are of a size only to keep the bridge in repair, and that it is to pay its cost within a specified time. In all these respects it is different from a private business corporation.

In an attempt to determine the true character of the Mount Hope Authority it is helpful to consider authorities of a similar nature which have been established in other states. The case of *Hope Natural Gas Co.* v. *West Virginia Turnpike Comm'n,* 143 W. Va. 913, was decided in 1958. The plaintiff alleged that it was damaged by reason of the defendant's negligence in so constructing its turnpike at the point of a pipe line relocation easement as to cause slips and slides from the turnpike which destroyed the plaintiff's pipe line. The defendant's demurrer was sustained and the matter was certified to the higher court. The demurrer contained several grounds, one of which was that the defendant was an agency of the state of West Virginia and as such was immune from suit. After a fairly lengthy discussion of the questions involved the court concluded that the plaintiff's action for negligence seeking to recover unliquidated damages was maintainable. In the course of the opinion the court stated at page 928: "The provisions of the statute clearly show that the Commission is an entity or *quasi* public corporation with the power to sue and be sued, to hold and acquire property including the right to do so by the exercise of the power of eminent domain, and to compensate for damages to private property solely from the revenues derived from tolls or other income as fixed and determined by the Commission, with-

out any liability on the State or any pledge of its faith and credit."

From this case it appears that the West Virginia statute is in many respects like our own but it is to be noticed that it gives the right to sue and to be sued, which provision is absent from the Rhode Island statute.

*People* v. *Illinois Toll Highway Comm'n,* 3 Ill. 2d 218, was an appeal from a circuit court involving the State Toll Highway Commission Act. In the course of a long opinion the court said at page 227: "The multiplicity of factors which the courts have considered in reaching a decision of this question makes it impracticable to extract a simple rule which will fit every situation. The factor entitled to most weight, in our opinion, is that under no circumstances can the general funds of the State be reached in order to satisfy an obligation of the commission. That factor, together with the largely independent control of the commission over the construction and maintenance of the proposed toll roads, permits it to be regarded as an independent entity so far as subjection to suit is concerned. The extent to which the commission would or would not be immune to actual liability in any particular action is of course not now before us. Our decision is simply that the constitution does not forbid it to be made a party defendant."

*Ewalt* v. *Pennsylvania Turnpike Comm'n,* 382 Pa. 529, is a case where the plaintiffs owned property on which was a small body of water well stocked with fish. In the construction of the turnpike large quantities of dirt, stones and debris were washed into a creek and carried into the plaintiffs' lake with the result that fish and aquatic life were killed. The plaintiffs sought equitable relief. The lower court held that the turnpike commission was engaged in an essential governmental function and was not liable for consequential damages. On appeal the supreme court held that under a section of the Western Pennsylvania Turnpike Extension Act of 1941 the plaintiffs had a right of

action for damages to their property and reversed the decision of the lower court.

The foregoing cases illustrate to some degree the exceptions that have been taken to the doctrine of sovereign immunity.

*Easley* v. *New York State Thruway Authority,* 1 N.Y.2d 374, was an action to recover damages allegedly suffered as a result of the negligence of New York State Thruway Authority. The question was as to the validity of a law which conferred exclusive jurisdiction upon the court of claims to hear and determine all claims against the New York State Thruway Authority for alleged torts or breaches of contract. The court stated at page 376: "It cannot be doubted that this Authority is an arm or agency of the State. * * * its members are appointed by the Governor with the approval of the Senate, its statutory purposes are declared to be 'in all respects for the benefit of the people of the state', its functions are statutorily declared to be 'governmental', its real property is held in the name of the State, the State advanced the money for constructing the Thruway, the State's public Works Department designed and supervised the construction work, the legal services are performed by the Attorney-General, the Authority must annually report to the Governor and Legislature, its funds are held by the State Comptroller, its bonds are guaranteed by the State pursuant to the vote of the People, and, eventually, the Authority's properties will revert to the State itself * * * . Since the State as sovereign may assert, waive, or condition at will immunity from suit for itself and its agents * * * the Legislature could in creating the Thruway Authority have refused to waive immunity as to it and thus could have forbidden suits to be maintained against the Authority in any court or tribunal."

The case of *Bettencourt* v. *State,* 123 Cal. App.2d 60, was determined in a district court of appeal of the state of Cali-

fornia in 1954. The action was one for personal injuries due to the defective condition of a bridge. The position of the state was that the operation of the bridge was a governmental function and that it was not liable for negligence in the discharge of such function in the absence of its consent to such liability and that it had not given its consent. The bridge was purchased, maintained and operated by the California Toll Bridge Authority. The question of whether the operation of the bridge was a proprietary or governmental function was discussed and the court held that it was the latter and that if the state was to be held for its negligence it was a matter for the legislature.

*Muszynski* v. *New Jersey Turnpike Authority*, 27 N.J. Super. 248, was an action for damages by the owner of property for the taking of her lands. The court held that the Turnpike Authority was the alter ego of the state and that the latter could not be sued for damages apart from those which the owner would take by the condemnation process.

*Vater* v. *County of Glenn*, 49 C. 2d 815, was an action for wrongful death. The court said at page 818: "The general rule is that, in the absence of a statutory or constitutional provision to the contrary, the state and its agencies are immune from liability for tort in the discharge of governmental duties and activities." Judgment for the defendants was affirmed.

In *Fowler* v. *California Toll-Bridge Authority*, 128 F.2d 549, decided in 1942, the plaintiff was suing to recover for plans made by him of a bridge and which were used without his consent in the construction of a bridge across San Francisco Bay. The plaintiff was a resident of the state of Louisiana. The court held that the suit was in effect one against the state of California and that there was therefore no jurisdiction. The court held that the Authority was representing and assisting the state in the performance of a governmental function, that of building, operating and

maintaining bridges; that in so doing it was performing a governmental function; that the Authority was not a separate entity embarked upon a profit-making enterprise in competition with private citizens; that it had no property; that the bridges belonged to the state; that the action was in effect against the state; and that the lower court was without jurisdiction to entertain it. The judgment of the lower court for the defendant was affirmed.

There are many cases in the reports where immunity for authorities such as the Mount Hope Authority has been waived and they have been permitted to sue and be sued. See *Petty* v. *Tennessee-Missouri Bridge Comm'n,* 359 U. S. 275, and *Miller* v. *Port of New York Authority,* 18 N. J. Misc. 601, at page 603: "A suit against such a state agency cannot be maintained if the effect of such action is a suit against the state — unless, of course, the state has consented."

However, in the instant case it does not appear that Mount Hope Authority has given permission to be sued and therefore there is no authority for so doing.

In answer to the question which we propounded earlier we are of the opinion especially in the light of the above-cited cases that the provisions of the act make clear that Mount Hope Authority is a direct state agency.

Since the Mount Hope Authority therefore possesses sovereign immunity, the question arises: Will it notwithstanding be subject to a declaration of rights under the declaratory judgment act? We think not. If this could be done we would have the picture of one state agency suing another state agency. When one considers what that could result in, we are of the opinion that the legislature never intended such a result and that when it omitted in the act the words "sue" and "be sued" it did so intentionally.

The appeal of Mount Hope Bridge Authority is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for further proceedings.

*Sheffield & Harvey, Hogan & Hogan, W. Ward Harvey, Edward T. Hogan,* for petitioner.

*Tillinghast, Collins & Tanner, Thomas R. Wickersham,* for respondent Mount Hope Bridge Authority.